**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE BAYAMÓN**

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLÓN** | **CIVIL NÚM:** |
| Parte Demandante | |
| v. | |
| **TOTALENERGIES MARKETING PUERTO RICO CORP., FULANOS DE TAL 1-100** | **SOBRE:** **PETICIÓN DE ORDEN** |
| Parte Demandante | |

**DEMANDA**

**AL HONORABLE TRIBUNAL:**

Comparece la parte demandante, Faustino Xavier Betancourt Colón (en adelante, "Parte Demandante" o "Faustino Betancourt"), a través de la representación legal que suscribe, y solicita una demanda de interdicto permanente al amparo de 42 U.S.C. § 12188 debido al incumplimiento de **TotalEnergies Marketing Puerto Rico Corp**[3]., y Fulanos De Tal 1-100 (en delante de manera individual por su nombre o de manera conjunta "Parte Demandada" con las disposiciones del Título III de la ley federal conocida como American with Disabilities Act, 42 U.S.C. § 12181 et seq. (en adelante nos referimos al estatuto federal como "Ley ADA")[1].

**EL LUGAR DE ACOMÓDO PÚBLICO EN CUESTIÓN**

1.     Esta es una acción que busca remediar la discriminación ilegal en un lugar de <u>acomodo público</u>[2] establecido y conocido en el lugar que se menciona a continuación:

---

[1] El Título III de la Ley ADA obliga a todas las entidades privadas y facilidades comerciales que brindan servicios al público. La obligación impuesta por el Título III consiste en no discriminar en el ofrecimiento de dichos servicios hacia las personas con impedimentos en el disfrute igual y pleno de los bienes, servicios y facilidades, privilegios, ventajas o acomodos en cualquier lugar de acomodo público. El enlace oficial del gobierno de los Estados Unidos con información sobre Título III de Ley ADA es: http://www.ada.gov/

[2] El término "public accommodation" o lugar de acomodo público, 42 U.S.C. 12181(7), se define como entidades privadas cuyas operaciones afectan el comercio y específicamente se mencionan

**TotalEnergies Marketing Puerto Rico Corp. H/n/c Cano's Service Station**
Dirección: Carrera 787, Km. 18.3, Bo. Bayamon, Cidra, Puerto Rico
Coordenadas: 18.17466397847254, -66.11172978899413

Para fines de ilustrar la propiedad en cuestión se adjunta una imagen para su

referencia.



(en adelante, nos referiremos a este lugar como "TotalEnergies marketing Puerto Rico

Corp.", "la Propiedad" el "lugar de acomodo público").

---

los siguientes lugares a modo de ejemplificar lo que es un lugar de acomodo público: hoteles, moteles, hospederías, restaurantes, barras, otros establecimientos que sirvan comida o bebidas, cines, teatros, salas de conciertos y presentaciones, estadios, lugares para exhibiciones o entretenimiento, auditorios, centros de convenciones, salas de presentaciones, lugares de congregación, panaderías, tienda de comestibles, tiendas de ropa, tiendas de herramientas, centros comerciales, otros establecimientos de ventas o renta, lugares de lavado ("laundromat"), secado (dry-cleaning), bancos, barberías, salones de belleza, agencias de viaje, servicios de reparación de zapatos, funerarias, estaciones de gasolina, oficina de un contable o abogado, farmacias, oficinas de seguros, oficina de profesionales de la salud, hospitales, otros establecimiento de servicios, un terminal o estación utilizado para transportación pública, museos, librerías, galerías, otros lugares donde haya exhibiciones públicas o colecciones, parques, zoológicos, parques de diversión y otros lugares de recreación, centro de cuido de infantes ("nursery"), escuelas elementales, secundarias, universidades, o escuelas post-graduadas privadas o cualquier otro lugar se provea educación, centro de cuido de niños, centro de cuido de "seniors", refugios de personas sin hogar, lugares donde se da comida, agencias de adopción, o cualquier otro establecimiento donde se dan servicios sociales, gimnasios, spas de salud, boleras, lugares de golf y otros lugares de ejercicio y recreación.

[3] El término "TotalEnergies marketing Puerto Rico Corp" aparece expresamente en el Registro de Corporaciones y entidades. Con el Núm. de Registro: 80482.

## NECESIDAD DE LA ACCIÓN

2.   Esta Demanda de interdicto permanente es necesaria por lo siguiente:

a) TotalEnergies Marketing Puerto Rico Corp.   Es dueño y operador del acomodo público descrito en el primer párrafo de la Demanda, la naturaleza de las operaciones del lugar es una estación de servicio de gasolina.

b) En consecuencia, es responsable y tiene la facultad de administración y adecuación de áreas externas, áreas comunes y áreas internas de la propiedad.

c) La parte demandante es consumidor de los bienes y servicios ofrecidos por TotalEnergies Marketing Puerto Rico Corp.

d) La Parte demandada no procuró la eliminación de barreras arquitectónicas en el estacionamiento, las rutas de acceso, el interior, y los baños.

e) La Parte Demandada mantiene en el lugar de acomodo público conocido comercialmente como **Cano's Service Station,** barreras arquitectónicas en violación de la ADA y a las Guías de Diseño Accesible promulgadas por el Departamento de Justicia de los Estados Unidos, las cuales puede ser accedidas a través del siguiente enlace oficial: https://www.ada.gov/2010ADAstandards_index.htm

f) La Parte Demandante visitó TotalEnergies Marketing Puerto Rico Corp. y allí encontró personalmente barreras arquitectónicas en el estacionamiento, las rutas de acceso, el interior, y los baños., dichas barreras se relacionan con su discapacidad.

g) La Parte Demandante se (i) encuentra en inminente riesgo de encontrar las barreras arquitectónicas o (ii) sería fútil regresar al lugar de acomodo público en este momento ya que constituiría un riesgo a la seguridad personal de la Parte Demandante o equivaldría a someterse a una condición o situación desagradable, humillante y discriminatoria;

h) La parte Demandante tiene la intención presente de poder disfrutar los bienes, privilegios, servicios que están disponibles en el lugar de acomodo

3

público una vez las barreras arquitectónicas sean removidas en su totalidad. Sin embargo, la Parte Demandante se reserva el derecho de regresar al lugar de acomodo público en cualquier momento antes de que se remuevan las barreras arquitectónicas, aunque ello represente someterse a condiciones peligrosas o discriminatorias, con el fin de buscar, identificar y denunciar el discrimen.

**LA PARTE DEMANDANTE**

3.  La Parte Demandante es una persona que sufre de una discapacidad física que limita sustancialmente varias de sus actividades cotidianas principales. La discapacidad física es: insuficiencia cardiaca (congestive heart failure, 20% heart function), hidrocefalia, anormalidades del pie, obesidad. Estas condiciones o "impairments" limitan sustancialmente al señor Faustino Betancourt, dicha discapacidad física limita sustancialmente (en comparación con la mayoría de la población) las siguientes actividades principales cotidianas o del diario vivir: caminar, estar de pie, levantar objetos, inclinarse, trabajar y otras que enciclopedias, diccionarios y tratados médicos autoritativos han relacionado con la discapacidad antes mencionada. De igual manera, La parte demandante tiene un extenso historial médico sobre estas condiciones.

4.  La parte Demandante tiene un "disability", según definido por la Ley ADA. 42 U.S.C. § 12102(1)(A).

**LA PARTE DEMANDADA**

5.  La Parte Demandada está integrada por las siguientes personas naturales o jurídicas:

    i.   TotalEnergies Marketing Puerto Rico Corp.  Es dueño u operador del acomodo público descrito en el primer párrafo de la Demanda. En consecuencia, es responsable y tiene la facultad de administración y adecuación de áreas externas, áreas comunes y áreas internas de la propiedad.

    ii.  Fulanos de Tal 1-100. Estas personas naturales o jurídicas desconocidas son

4

titulares, arrendadores, arrendatarios y operadores de la Propiedad que se identifica en el primer párrafo de esta petición. Ya que la identidad de estos se desconoce en estos momentos, se enmendará la Demanda a los fines de acumularlos a este procedimiento civil. En esta Petición, el término "Parte Demandante" incluye también a todos los demandados desconocidos identificados con el nombre ficticio "Fulano de Tal 1-100".

## JURISDICCIÓN Y COMPETENCIA

7.     De este procedimiento civil ser removido al Tribunal de Distrito de los Estados Unidos, se invocada jurisdicción sobre la materia de conformidad con 28 U.S.C. §§ 1331 y 1343 (a)(3) y (a)(4) por violaciones de la ADA.

8.     El Tribunal de Primera Instancia tiene jurisdicción original para dilucidar controversias que surgen al amparo del Título III de la *American with Disabilities Act* y la *Rehabilitation Act*.

9.     Esta acción civil ha sido presentada ante el foro judicial que ostenta la competencia toda vez que la Propiedad en controversia está ubicada en esta región judicial.

## HECHOS

10.    La Propiedad es un lugar de acomodo público según definido por la Ley ADA, 42 U.S.C. 12181(7) y es un lugar abierto al público y cuya operación afecta el comercio por su naturaleza de estación de servicio de gasolina.

11.    La Propiedad no es residencial, no es un club privado ni es una iglesia. Cualquier persona puede acceder a utilizar el servicio de gasolina y pagar por el consumo.

12.    La Parte demandante es residente de Puerto Rico. Su dirección física y postal es: RES Los Lirios, 11 Calle Teresa Jornet, Edificio 12, Apartamento 34, San Juan (Cupey), Puerto Rico. Su número de teléfono es: (787) 348-7280.

13.    El señor Betancourt visita frecuentemente el área porque tiene familia en Bayamón,

14.    El señor Betancourt visitó el 9 de mayo de 2021 la propiedad en cuestión con el fin de adquirir el servicio de gasolinera y comprar combustible y lubricante para su

vehículo de motor.

15.   El señor Betancourt desea una vez el lugar de acomodo sea accesible para el en su condición de discapacitado, volver al lugar de acomodo público a comprar gasolina para su vehículo de motor (carro), aceite, lubricantes en general y los servicios ofrecidos en el lugar, tales como tienda y utilizar los baños.

16.   El lugar de acomodo publico tiene como dependencia un minimarket conocido como: Cano`s Service Station localizado en la carrera PR. 787 Km 4.4 Sector Juan de Valle Bo Bayamón Cidra PR. 00789.

17.   La parte demandante visitó la Propiedad para eso el 9 de mayo de 2021 y encontró barreras que interfirieron con la capacidad de la Parte demandante para usar y disfrutar los bienes, servicios, privilegios y acomodos ofrecidos en la Propiedad.

18.   La Parte demandante visitó Cano`s Service Station el 9 de mayo de 2021 a las 6:12pm y adquirió lo siguientes productos: 1. Galón Puerto Rico por un costo de $24.75, 1 Aceite total por un costo de $ 5.50. 1. Reciclaje aceite por un costo de $ 0.75. Se adjunta imagen correspondiente a factura de compra de la fecha de visita por parte del señor Betancourt. Transacción Núm. 289835.  Turno Núm. 1458.

Véase Factura a continuación.

19.     Demandante invoca legitimación como persona que tiene la intención de regresar a la Propiedad con el propósito expreso de buscar e identificar barreras arquitectónicas que haya en la Propiedad en el futuro. El fin de la búsqueda e identificación de las barreras arquitectónicas será con el fin de: (1) denunciar barreras adicionales que se encuentren en el futuro; (2) verificar el cumplimiento o no cumplimiento de cualquier orden que dicte este tribunal sobre eliminación de barreras arquitectónicas. Se alega afirmativamente la existencia de legitimación activa como *tester* de derechos civiles, según alegado en este párrafo, conforme a la norma vinculante en esta jurisdicción establecida en <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st Cir. Feb. 17, 2021), donde se estableció que no es necesario que una persona con discapacidades sea un "cliente bona fide" del lugar de acomodo público para tener standing para reclamar derechos bajo ADA. Un *tester* de derechos civiles es una persona que tiene la intención específica de buscar, identificar y denunciar el discrimen, aunque ello represente someterse al discrimen o a condiciones poco seguras.    En <u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, el Primer Circuito estableció inequívocamente la existencia de legitimación activa de *tester* al determinar:

> Panaderia España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.

> We have not previously addressed the impact of a plaintiff's status as a "tester" on her ability to establish standing under the ADA. However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat standing. As the Eleventh Circuit explained in <u>Houston v. Marod Supermarkets, Inc.</u>, the ADA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility." 733 F.3d at 1332. Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement. Id. at 1332-34 (contrasting 42 U.S.C. §§ 3604(a), and 12182(b)(1)(A)(iv), which do contain such requirements). Hence, such limitations should not be read into the ADA. Id. We agree with this analysis. **Accordingly, we conclude that appellants' status as testers does not defeat standing.**

<u>Suarez-Torres v. Panadería y Repostería España, Inc.</u>, No. 18-1618 (1st Cir. Feb. 17, 2021) (citas internas omitidas)(énfasis nuestro).

20.     En su capacidad de cliente bona fide, la Parte Demandante se ha sentido, y se siente hoy en día, disuadido o desalentado de visitar la Propiedad porque tiene

7

conocimiento de las barreras ilegales que limitan e interfieren con su acceso a la Propiedad en el estacionamiento, las rutas de acceso, el interior, y los baños. La Parte Demandante conoce los bienes y servicios ofrecidos en la Propiedad, y regresará a la Propiedad una vez que se eliminan las barreras. La Parte Demandante sabe que sería inútil enfrentar estas barreras porque enfrentarlas equivale a someterse a una situación humillante, discriminatoria y peligrosa. Todas las barreras aquí descritas están directamente relacionadas con la discapacidad de la Parte Demandante e interfieren su completo y acceso igual acceso. No obstante, a pesar de sentirse disuadido, tiene la intención de regresar para buscar, identificar y denunciar el discrimen que existe en esa Propiedad.

21. A base de sus observaciones personales, y a base de su experiencia como persona con limitaciones que ha visto cientos de lugares accesibles y no accesibles a través de su vida, la Parte Demandante alega afirmativamente que existen las siguientes barreras arquitectónicas de *diseño* en la Propiedad relacionadas a su discapacidad y sus limitaciones de movilidad:

**Acceso Desde Afuera de la Propiedad:**
**Estacionamiento, Ruta de Acceso y Entrada de Cano's Service Station**

a) En cuanto a la ruta de acceso, no hay una ruta de acceso desde los estacionamientos o la acera hasta una entrada accesible sin escaleras. ADAAG 1991 § 4.3; ADAAG 2010 § 206.2.1. Posibles soluciones: añadir una rampa, modificar para que la gradación de la pendiente sea 1:20; añadir una plataforma de elevación ("lifter").

b) En cuanto a los estacionamientos, no hay el número requerido de estacionamientos accesibles. ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

c) El estacionamiento no recibe un mantenimiento adecuado para que se mantenga en "condición operable" en violación a 28 C.F.R. § 36.211(a). Por ejemplo, el mantenimiento del área de estacionamiento ha sido pobre, inconsistente y en incumplimiento con la reglamentación aplicable.

d)    La configuración y dimensiones de los estacionamientos accesibles es sustancialmente inconsistente con los requisitos de reglamentación aplicable. ADAAG 2010 § 502.2, 502.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

e)    La configuración y dimensiones de los espacios adyacentes a los estacionamientos es sustancialmente inconsistente con los requisitos de la reglamentación aplicable. ADAAG 2010 § 502.2, 502.3., 503.3.3. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

f)    En cuanto a estacionamientos, no se cumple el requisito de que al menos un estacionamiento que cumpla con las especificaciones técnicas y dimensiones de la categoría "van". ADAAG 1991 § 4.1.2 (b); ADAAG 2010 § 208.2. Tampoco se cumple con el requisito de que una sexta parte de los estacionamientos accesibles tengan las dimensiones de categoría "van". Id. Posibles soluciones: reconfigurar el estacionamiento mediante la utilización de pintura.

g)    Ningún estacionamiento tiene la rotulación de "van" requerida por la reglamentación aplicable. ADAAG 2010 § 502.6. Posibles soluciones: colocar la rotulación en todos los estacionamiento.

h)    Los estacionamientos no están identificados con el símbolo internacional de accesibilidad. ADAAG 2010 § 502.3. Posibles soluciones: colocar toda la rotulación reglamentaria en todos los estacionamientos accesibles. La rotulación debe ser a la altura y en la posición requerida por la reglamentación.

i)    La entrada no cumple con los requisitos de la reglamentación aplicable. En cuanto a las entradas que no son accesibles, estas no tienen letreros que indiquen la ubicación de la entrada accesible. ADAAG 2010 § 216.6 Hay entradas accesibles y no accesibles, pero las entradas accesibles no tienen el símbolo internacional de impedido identificándolas. ADAAG 2010 § 216.6. Posibles soluciones: hacer todas las entradas accesibles y/o colocar la rotulación requerida por la reglamentación aplicable.

**Acceso Adentro de la Propiedad: Acceso a Bienes y Servicios**

j)    Existe una fila de pago y mostrador ("checkout aisle" [FILA DE PAGO -

CAJEROS]), pero las dimensiones y espacios son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 2010 § 7.3; ADAAG 2010 §§ 904.3.1 (pasillo de pago de 36"), 904.3.2 (superficie no más alta de 38"). Posibles soluciones: ampliar el ancho del pasillo y modificar el tamaño del mostrador de pago.

k)   Hay mostradores de ventas y servicios, pero la configuración y dimensiones son sustancialmente inconsistentes con la reglamentación aplicable. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiriendo que haya una porción del mostrador que sea 36" de alto por 36" de ancho), 904.4 (requiriendo que la parte accesible del counter sea de la misma profundidad que la parte no accesible), 904.4, 904.1 (requiriendo un espacio mínimo para acercamiento paralelo u horizontal al mostrador), 306.2.2, 306.2.4, 306.3.1 (requiriendo un espacio debajo del mostrador cuando el diseño del mostrador es para acercamiento frontal). Posibles soluciones: bajar una sección del mostrador, ampliar una sección del mostrador, remplazar el mostrador, ampliar la profundidad del mostrador, reconfigurar espacios para permitir acercamiento paralelo o frontal, reconfigurar mostrador para dar el espacio requerido debajo del mostrador en casos de diseño para acercamiento frontal.

### Acceso a Baño de Hombres

l)   El baño que no es accesible carece de la rotulación que exige la reglamentación aplicable. ADAAG 2010 §216.8, 206.2.4.   Posibles soluciones: colocar la rotulación a la altura y en el posicionamiento correcto. Nótese que la rotulación debe cumplir además con los requisitos para que sea accesible a las personas con discapacidades visuales.

m)   En cuanto a los pasamanos alrededor del inodoro, tanto al lado ("side grab bar") como detrás ("rear grab bar") del inodoro, la configuración existente en la pared al lado y detrás del inodoro es sustancialmente inconsistente con la reglamentación aplicable a los pasamanos, incluso no hay un pasamanos detrás. ADAAG 2010 §§ 604.5.1, 609.4., 609.3, 604.5.2, 609.4, 609.6. Posibles soluciones: colocar y posicionar pasamanos de manera consistente con la

reglamentación citada.

n)   En cuanto al lavamanos, la parte de abajo del lavamanos no está configurada para evitar el contacto con los objetos que están debajo del lavamanos. ADAAG 2010 § 605.5. Posibles soluciones: modificar el área debajo del lavamanos para que no haya contacto entre piernas o rodillas y los objetos que están debajo del lavamanos.

o)   En cuanto al equipo para secado de manos, el posicionamiento y altura incumple sustancialmente con la reglamentación aplicable. ADAAG 2010 §§ 308.2. Posibles soluciones: reubicar el equipo de secado.

22.   El no tener acceso igualitario a los bienes y servicios ofrecidos por el lugar.

23.   Las barreras identificadas en el párrafo anterior son solo aquellas que la Parte Demandante conoce personalmente a base de su experiencia y sentido común como persona con discapacidades, no a base de pruebas científicas o periciales.  La totalidad de las barreras existentes en la Propiedad, incluyendo las encontradas y otras no descubiertas al momento, son la causa del daño legal de la Parte Demandante, es decir, la falta de acceso completo, libre y espontaneo a la Propiedad. Por esto, es la intención de la Parte Demandante utilizar los mecanismos de descubrimiento de prueba para buscar, identificar y señalar todas aquellas barreras arquitectónicas relacionadas con la discapacidad de la Parte Demandante para que el acceso a la Propiedad sea completo e igualitario.  Luego de identificadas las barreras, la Parte Demandante se propone solicitar al tribunal enmendar las alegaciones para conformar las mismas a la prueba descubierta sobre violaciones a la ADAAG ahora desconocidas.

24.   Los Demandados sabían, o debían saber, que la Propiedad era y es inaccesible; que las condiciones la Propiedad violan la ley federal e interfieren (o niegan) el acceso a los discapacitados. Además, los Demandados tienen los recursos financieros para eliminar estas barreras de la Propiedad (sin mucha dificultad o gasto), y hacer que la Propiedad sea accesible para la Parte Demandante. Hasta la fecha, sin embargo, la Parte Demandada se niega a eliminar esas barreras.

25.   La Parte Demandada ha poseído y disfrutado de suficiente control y autoridad

para modificar la Propiedad para eliminar barreras y cumplir con la reglamentación federal aplicable. La Parte Demandada no ha eliminado tales barreras y no ha modificado la Propiedad para cumplir con los estándares de accesibilidad aplicables. La Parte Demandada, de manera intencional, ha mantenido la Propiedad en su estado actual y se ha abstenido intencionalmente de alterar la Propiedad para que cumpla con los estándares de accesibilidad.

26.     La Parte Demandante alega afirmativamente que la presencia continua de barreras en la Propiedad es tan obvia y abierta que establece la intención discriminatoria de la Parte Demandada. La naturaleza de las desviaciones a los estándares federales no sugiere incumplimiento con la reglamentación debido a mera negligencia o un error humano. El incumplimiento existente es tan sustancial que es obvio para un observador casual de inteligencia promedio que no tiene pericia en los estándares de diseño accesible o que no tiene experiencia con barreras arquitectónicas por no tener una discapacidad. Es a base de esto que la Parte Demandante cree, y por tanto alega afirmativamente, que la intención discriminatoria incluye la negativa consciente y ponderada de no adherirse a normas de construcción relevantes; el menosprecio hacia los planos de construcción y permisos emitidos para la Propiedad; la decisión concienzuda de mantener el diseño arquitectónico (tal como existe actualmente) en la Propiedad; la decisión de no eliminar las barreras arquitectónicas mantenerla en estado de incumplimiento motivado por fines de lucro. Se alega afirmativamente que la Parte Demandada ha querido mantener una competencia desleal con sus competidores al no invertir dinero en cumplir con el mandato federal a pesar de que sus competidores si tienen que invertir en cumplimiento, lo que afecta a otros actores económicos. Las barreras arquitectónicas en la Propiedad no son interrupciones aisladas (o temporales) de acceso por mantenimiento o reparaciones.

27.     Basado en el incumplimiento histórico de la Parte Demandados con la ADAAG, la Parte Demandante cree, y por lo tanto alega, que la Parte Demandada no tiene políticas, procedimientos o documentos internos en relación a esfuerzos de cumplimiento de ADA en la Propiedad.

12

## CAUSA DE ACCIÓN
### American with Disabilities Act de 1990

28.     La Parte Demandante incorpora las alegaciones contenidas en los párrafos anteriores.

29.     El Título III de la ley ADA dispone esencialmente que ningún individuo será tratado de manera desigual por razón de discapacidad en el pleno y equitativo disfrute (o uso) de bienes, servicios, instalaciones, privilegios y acomodos ofrecidos por cualquier persona ya sea titular, arrendador, arrendatario u operador de un lugar de acomodo público. 42 U.S.C. § 12182 (a).

30.     La Parte Demandada discriminó contra la Parte Demandante al negarle un disfrute y acceso pleno e igual a los bienes, servicios, privilegios y acomodos de la Propiedad durante cada visita y cada ocasión en que la Parte Demandada decidió no visitar el lugar.

31.     La Ley ADA establece diferentes estándares dependiendo de cuándo se construyó la estructura física y si la instalación ha sido alterada desde el 26 de enero de 1992. 28 CFR §§ 36.401, 36.402. Las propiedades "existentes" antes del 26 de enero de 1992 tienen que eliminar las barreras de acceso de las personas con discapacidades cuando la eliminación sea "fácilmente alcanzable". 42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304. Estructuras diseñadas y construidas para ser ocupadas por primera vez después del 26 de enero de 1993 deben ser accesibles para personas con discapacidades a menos que la entidad pueda demostrar que es "estructuralmente poco práctico". 42 USC § 12183 (a). Finalmente, las alteraciones posteriores al 26 de enero, 1992 debe hacerse para garantizar que, en la "máxima extensión posible", las porciones alteradas de las instalaciones sean accesibles. 28 CFR § 36.402 (a) (1).

32.     Los estándares de diseño, ADAAG, se publicaron por primera vez en 1991 y están codificados en 28 CFR Parte 36, Apéndice A ("ADAAG de 1991"). Los más recientes estándares de diseño ADA fueron publicado por primera vez en 2010 y se codificaron en 28 CFR Parte 36, Subparte D (La ADAAG de 2010). Ambas normas están disponibles en www.ada.gov. Todas las construcciones nuevas y modificaciones comenzadas el 15 de marzo de 2012 o después deben cumplir con la ADAAG de 2010.

13

33.    La Parte Demandante cree que la Propiedad fue diseñada para ser ocupada por primera vez después del 26 de enero de 1993. Ver 28 CFR § 36.401.

34.    La Parte Demandante cree que la Propiedad está ubicada en un lugar que fue construido después del 26 de enero de 1993. Ver 28 CFR § 36.401.

35.    La Parte Demandante cree que la Propiedad fue "alterada" luego del 26 de enero de 1993. El término "alterada" o "alteraciones" incluye, pero no se limita a, remodelación, renovación, rehabilitación, restauración histórica, cambios o reordenamiento en partes o elementos estructurales, cambios o reordenamiento en la configuración de paredes y cambios en los mostradores, mesas u objetos dentro de la Propiedad.

36.    En la alternativa, si la Propiedad no fue diseñada y construida para ser ocupada por primera vez después de 26 de enero de 1993, la Propiedad es una instalación existente en cuyo caso hay una obligación de eliminar barreras arquitectónicas que afectan a las personas con discapacidad en la medida que la eliminación sea "fácilmente alcanzable". 42 USC § 12182 (b) (2). La ley ADA establece que, al evaluar si la eliminación de barreras es "fácilmente alcanzable ", los factores a considerar incluyen los" recursos "de la instalación, 42 USC § 12181 (9) (b), que incluye "los recursos financieros generales de cualquier empresa matriz o entidad ", 28 CFR § 36.104. Si la Parte Demandada sostiene que no tiene los recursos financieros a modo de defensa afirmativa para excusar su incumplimiento, la Parte Demandante no acepta dichos pretextos y se propone utilizar los mecanismos de descubrimiento de prueba conforme a 28 C.F.R. § 36.104.

### NO ELIMINAR LAS BARRERAS EN UNA INSTALACIÓN EXISTENTE

37.    La ADA prohíbe específicamente no eliminar las barreras arquitectónicas en instalaciones existentes cuando tal eliminación es fácilmente alcanzable. 42 USC § 12182 (b) (2) (A) (iv); 28 C.F.R. § 36.104.

38.    Cuando una entidad puede demostrar que la eliminación de una barrera no se puede lograr fácilmente, esa entidad tiene que procurar que los bienes, servicios, privilegios y acomodos se hagan disponibles mediante mecanismos alternos, si estos métodos son fácilmente alcanzables.  § 12182 (b) (2) (A) (v).

14

39.     Aquí, la parte Demandante alega que la Parte Demandada puede eliminar fácilmente las barreras arquitectónicas en la Propiedad sin mucha dificultad o gasto, y que la Parte Demandada viola la ley ADA al no eliminar esas barreras, cuando fácilmente podía y puede hacerlo.

40.     En la alternativa, si no es "fácilmente alcanzable" para la Parte Demandada eliminar las barreras arquitectónicas, la Parte Demandada violó la ADA al no hacer disponibles sus servicios a través de métodos alternativos que fuesen fácilmente alcanzables.

## NO DISEÑAR Y CONSTRUIR
## UNA INSTALACIÓN ACCESIBLE

41.     La Propiedad fue diseñada y construida (o ambos) después del 26 de enero de 1992 - activando los requisitos de acceso bajo el Título III de la ADA y la reglamentación promulgada por el Departamento de Justicia de los Estados Unidos.

42.     La Parte Demandada violó la ley ADA al diseñar y construir (o ambos) la Propiedad en una manera que no era fácilmente accesible para el público con discapacidad física, incluida la Parte Demandada, cuando hacerlo era estructuralmente práctico.

## NO HACER ACCESIBLE UNA INSTALACIÓN ALTERADA

43.     La Parte Demandante cree, y por tanto alega afirmativamente, que la Propiedad ha sido alterada (según el término "alteración" es definido por §§ 202.1, §202.3, 202.4) después del 26 de enero de 1992.  28 CFR §36.403; 49 CFR §37.43.

44.     La ADA también requiere que las instalaciones se alteren de forma tal que sea fácilmente accesible para las personas con discapacidad en la medida máxima posible. 42 U.S.C. § 12183 (a) (2).

45.     La Parte Demandada alteró la Propiedad de una manera que violó la ADA y que la hizo no fácilmente accesible al público con discapacidad física, incluyendo a la Parte Demandante.

## BARRERAS NO ESTRUCTURALES:
## POLÍTICAS Y PROCEDIMIENTOS

46.     La ley ADA también requiere hacer modificaciones razonables en las políticas,

prácticas o procedimientos, cuando es necesario para dar igual acceso a los servicios, bienes, privilegios o acomodos a las personas con discapacidades, a menos que la entidad pueda demostrar que hacer tales modificaciones alterarían fundamentalmente su naturaleza. 42 USC § 12182 (b) (2) (A) (ii).

47.    Aquí, la Parte Demandada violó la ley ADA al no hacer modificaciones razonables en sus políticas, prácticas o procedimientos en la Propiedad, cuando estas modificaciones son necesarias para permitir (sin alterar fundamentalmente la naturaleza del lugar de acomodo público) el igual acceso a los bienes, servicios, instalaciones, o acomodos.

**SOLICITUD DE INTERDICTO PERMANENTE
BAJO EL TITULO III DE LA ADA**

48.    Como resultado de las barreras arquitectónicas descritas anteriormente en esta presente acción la Parte Demandante sufrió y continúa sufriendo humillación, angustia y menoscabo de su dignidad personal y derecho a vivir libre de discriminación o interferencia con sus derechos legales.

49.    La Parte Demandante tiene derecho a un remedio a un interdicto estatutario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Demandada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Demandada haya adoptado y siga una política institucional que de hecho haga que la Parte Demandada permanezca totalmente en cumplimiento con la ley.

50.    La Parte Demandante también tiene derecho a que en caso de que la Parte Demandada continúe su condición discriminatoria, pueda solicitar que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Demandada haya acreditado de manera

fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

51.    Conforme a 42 USC §§ 12205, la Parte Demandante tiene derecho a sus honorarios de abogado, gastos de litigio, costas y gastos de testigos periciales.

## REMEDIOS LEGALES SOLICITADOS

**POR TODO LO CUAL**, la Parte Demandante muy respetuosamente solicita los siguientes remedios legales:

A. Una sentencia declaratoria disponiendo que la parte Demandada ha violado los requisitos del Título III de la ADA y la reglamentación de implementación relevante de la ADA; y que la Propiedad no es completamente accesible y utilizable de manera independiente para personas con movilidad limitada como la Parte Demandante;

B. Un interdicto estatuario permanente de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 (a) que ordene a la Parte Demandada a que tome todos los pasos necesarios para eliminar las barreras arquitectónicas descritas anteriormente y para que sus instalaciones cumplan con los requisitos establecidos en la ADA y sus reglamentos de implementación, para que sus instalaciones sean totalmente accesibles a, y de forma independiente, por personas con movilidad limitada, y que además ordene que el tribunal retendrá jurisdicción por un período para supervisar que la Parte Demandada cumpla con los requisitos relevantes de la ADA y para asegurarse de que la Parte Demandada haya adoptado y siga una política institucional que de hecho haga que la Parte Demandada permanezca totalmente en cumplimiento con la ley;

C. En caso de que la Parte Demandada continúe su condición discriminatoria, se solicita de conformidad con 42 USC § 12188 (a) (2) y 28 CFR § 36.504 que se ordene el cierre y clausura de la Propiedad como medida para detener la condición discriminatoria hasta tanto la Parte Demandada haya acreditado de manera fehaciente a satisfacción del tribunal que se ha eliminado el discrimen;

D. Honorarios de abogado, costas, gastos de litigio, conforme a 42 USC § 12205.

E. La provisión de cualquier otro remedio que sea justo, propio, en ley o equidad,

que no haya sido expresamente solicitado pero que proceda como cuestión de

derecho.

**SOMETIDO RESPETUOSAMENTE.**

Hoy 30 de abril de 2022

**Velez Law Group LLC**
División Derechos Civiles

f/José Carlos Vélez Colón
Lic. José C. Vélez Colon
RUA 18913
Condominio Midtown
421 Ave Muñoz Rivera #205
San Juan, PR 00918-3115
jvelez@velezlawgroup.com
T.: (787)-254-8267

Abogado de la Parte Demandante

BY2022CV02233 30/05/2022 02:40:05 pm Entrada Núm. 2 Página 2 de 2

## PRUEBA DEL DILIGENCIAMIENTO

### NUM.: DE CASO: BY2022CV02233
### Faustino Xavier Betancourt Colon V. TotalEnergies Marketing Puerto Rico Corp

Yo, _Gabriel Santana_ declaro tener capacidad legal conforme a la Regla 4.3 de las Reglas de Procedimiento Civil de Puerto Rico, y certifico bajo mi firma y juramento que el diligenciamiento del **EMPLAZAMIENTO y DEMANDA (en adelante, "DEMANDA")** en el caso de referencia fue realizado por mí persona de la manera en que se indica más abajo:

1. **FECHA** y hora del diligenciamiento: _26 - Mayo - 2022_

2. **LUGAR o DIRECCIÓN** de la entrega del Emplazamiento y copia de la Demanda de manera conjunta:
   _Millenium Park Plaza #15 2nd ST. Suite 505_
   _Guaynabo P.R 00968_

3. **MODO O FORMA DE ENTREGA** Entregué copia del Emplazamiento y copia de la Demanda de manera conjunta y personalmente a la persona indicada abajo, quien aseguró estar autorizado a recibir emplazamientos a nombre de la persona que consta al dorso conforme a la Regla 4.4 de las Reglas de Procedimiento Civil de Puerto Rico.

4. **EL NOMBRE DE LA PERSONA AUTORIZADA QUE RECIBIÓ EL EMPLAZAMIENTO Y DEMANDA ES:**
   _Luis Lladó - Director Network_

5. **FIRMA DEL DILIGENCIANTE:** _____

**********************************************************************

### DECLARACION DEL DILIGENCIANTE
### (ANTE LA SECRETARIA DEL TRIBUNAL)

Declaro bajo pena de perjurio, conforme a las leyes del Estado Libre Asociado de Puerto Rico, que la información arriba provista en el diligenciamiento del emplazamiento es verdadera y correcta.

**Y PARA QUE ASÍ CONSTE,** suscribo la presente en _____, Puerto Rico,

hoy día _____ de_____ del año **2022**.

_____
**FIRMA DEL EMPLAZADOR**

Jurado y suscrito ante mí por _____ de las circunstancias personales arriba mencionadas, a quien por no conocer personalmente, doy fe de haber identificado mediante la siguiente identificación personal:

_____

En _____, Puerto Rico hoy _____ de _____ de 2022.

_____
**FUNCIONARIO AUTORIZADO**

BY2022CV02233 30/04/2022 02:46:09 pm Entrada Num. 2 Pagina 1 de 2
BY2022CV02233 05/05/2022 09:56:00 a.m. Página 1 de 2

## ESTADO LIBRE ASOCIADO DE PUERTO RICO
## TRIBUNAL DE PRIMERA INSTANCIA
## SALA SUPERIOR DE BAYAMÒN

| | |
|---|---|
| **FAUSTINO XAVIER BETANCOURT COLON** | **CIVIL NÚM: BY2022CV02233** |
| **Parte Demandante** | |
| v. | |
| **TOTALENERGIES MARKETING PUERTO RICO CORP., FULANOS DE TAL 1-100** | **SOBRE: PETICION DE ORDEN** |
| **Parte Demandada** | |

### EMPLAZAMIENTO

ESTADOS UNIDOS DE AMERICA, SS
EL PRESIDENTE DE LOS ESTADOS UNIDOS
EL ESTADO LIBRE ASOCIADO DE PUERTO RICO

A:
## TOTALENERGIES MARKETING PUERTO RICO CORP
**DIRECCION:** Milleniun Park Plaza #15 Second Street, Suit 525 Guaynabo, PR 00968
**PRESIDENTE:** Francois Boussagol

POR LA PRESENTE se le emplaza para que presente al tribunal su alegación responsiva dentro de los 30 días de haber sido diligenciado este emplazamiento, excluyéndose el día del diligenciamiento. Usted deberá presentar su alegación responsiva a través del Sistema Unificado de Manejo y Administración de Casos (SUMAC), al cual puede acceder utilizando la siguiente dirección electrónica: https://unired.ramajudicial.pr, salvo que se represente por derecho propio, en cuyo caso deberá presentar su alegación responsiva en la secretaria del tribunal. Si usted deja de presentar su alegación responsiva dentro del referido término, el tribunal podrá dictar sentencia en rebeldía en su contra y conceder el remedio solicitado en la demanda, o cualquier otro, si el tribunal, en el ejercicio de su sana discreción, lo entiende procedente.

| | |
|---|---|
| Nombre del Abogado: | JOSÉ CARLOS VÉLEZ COLÓN (RUA: 18913) |
| Dirección: | 421 AVE MUNOZ RIVERA, APT #205, SAN JUAN, PUERTO RICO, 00918-4015 |
| | Tel: (787)-254-8267 |
| Correo Electrónico: | VLG@VELEZLAWGROUP.COM |

Expedido bajo mi firma y sello del Tribunal, el _____ de _____ MAY 0 5 2022 de _____.

LISILDA MARTINEZ AGOSTO
**Nombre del (de la) Secretario(a) Regional**

Por: _____

ALEXANDRA BORGES OCASIO
SEC. AUXILIAR TRIBUNAL
**Nombre y Firma del (de la) Secretario(a) Auxiliar del Tribunal**

E038