## COMMONWEALTH OF PUERTO RICO
## COURT OF FIRST INSTANCE
## SUPERIOR PART OF BAYAMON

| | | |
|---|---|---|
| **FAUSTINO XAVIER BETANCOURT COLÓN** | . | **CIVIL NO.:** |
| | . | |
| **Plaintiff** | . | |
| | . | |
| **vs.** | . | |
| | . | |
| **TOTALENERGIES MARKETING PUERTO RICO CORP.** | . | **RE:** |
| | . | **PETITION FOR ORDER** |
| **JOHN DOE 1-100** | . | |
| | . | |
| **Defendant** | . | |

..................................................................................................................

### COMPLAINT

**TO THE HONORABLE COURT:**

Comes now the plaintiff, Faustino Xavier Betancourt Colón (hereinafter

"Plaintiff" or "Faustino Betancourt", through the undersigned legal

representation, and requests a permanent injunctive complaint pursuant to 42

U.S.C. §12188 due to the lack of compliance of **TotalEnergies Marketing**

**Puerto Rico Corp.**[3] and John Doe 1-100 (hereinafter in an individual manner

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

by their name or in a joint manner "Defendant" with the provisions of Title III

of the Federal Law known as Americans with Disabilities Act, 42 U.S.C. §12181

et seq.  (hereinafter we refer to the Federal statute as the "ADA Act").[1]

### THE LOCATION OF THE PUBLIC ACCOMMODATION IN QUESTION

1.      This is an action that seeks to remedy the illegal discrimination in a

location of public accommodation[2] established and known in the place that is

hereinafter mentioned:

_____

[1]    Title III of the ADA Act obligates all private entities and commercial facilities that provide services to the public.  The obligation imposed by Title III consists in not discriminating in the offering of said services towards the persons with impediments in the equal and full enjoyment of the assets, services and facilities, privileges, advantages or accommodations in any location of public accommodation. The official liaison of the government of the United States with information about Title III of the ADA Act is:  http://www.ada.gov/

[2] The term "public accommodation" or location of public accommodation, 42 U.S.C. 12181(7) is defined as private entities whose operations affect commerce and specifically there are mentioned the following locations by way of exemplifying what is a location of public accommodation: hotels, motels, inns, restaurants, bars, other establishments that serve food or beverages, movies, theaters, concert halls and presentations, stadiums, locations for exhibitions or entertainment, auditoriums, convention enters, presentation halls, congregation locations, bakery stores, food stores, clothing stores, tool stores, commercial centers, other establishments of sale or rent, laundromats, dry cleaning, banks, barbershops, beauty shops, travel agencies, shoe repair centers, funeral parlors, gas stations, offices of accountant or attorney, pharmacies, insurance offices, health professional offices, hospitals, other service establishments, a terminal or station used for public transportation, museums, libraries, galleries, other locations where there are public exhibitions or collections, parks, zoos, entertainment parks and other places of recreation, nurseries, elementary, secondary schools, universities, or private post-graduate schools or any other location where education is provided, child care enter, care center for seniors, shelters for

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

3

TotalEnergies Marketing Puerto Rico Corp. d/b/a/ Cano's Service Station
Address: Road 787, Km. 18.3, Bayamon Wd., Cidra, Puerto Rico
Coordinates: 18.17466397847254, -66.11172978899413

For purposes of illustrating the property in question we enclose an image for

your reference:

(picture of service station)

(hereinafter we will refer to this location as "TotalEnergies marketing Puerto Rico

Corp.", "the Property", or the "location of public accommodation").

_____

persons without homes, places where good is provided, adoption agencies, or any other
establishment where social services are given, gymnasium, health spas, bowling alleys, golf
locations and other locations of exercise and recreation.

[3]  The term "TotalEnergies marketing Puerto Rico Corp." appears expressly in the Registry of
Corporations and entities with Registration No.: 80482.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

4

## NEED OF THE ACTION

2.      This Complaint for permanent injunction is necessary due to the following:

a)      TotalEnergies Marketing Puerto Rico Corp. is the owner and operator of the public accommodation described in the first paragraph of the complaint, the nature of the operations, of the location is a gasoline service station.

b)      In consequence of this, it is responsible and has the faculty of administration and adaptation of external areas, common areas and internal areas of the property.

c)      The plaintiff is the consumer of the assets and services offered by TotalEnergies Marketing Puerto Rico Corp.

d)      The defendant did not procure the elimination of architectural barriers in the parking, the access routes, the interior and the bathroom.

e)      The Defendant maintains in the location of public accommodation commercially known as **Cano's Service Station**, architectural barriers in violation of ADA and the Guidelines of Accessible Design

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

5

promulgated by the Department of Justice of the United State, which can be accessed through the following official link: https://www.ada.gov/2010ADAstandards_index.htm.

f)      The Plaintiff visited TotalEnergies Marketing Puerto Rico Corp. and found therein personally architectural barriers in the parking, the access routes, the interior, and the bathrooms, said barriers relate to his incapacity.

g)      The Plaintiff is (i) in imminent risk of finding the architectural barriers or (ii) it would be futile to return to the place of public accommodation at this time since it would constitute a personal security risk of the Plaintiff or would be equal to submitting to a n unpleasant, humiliating and discriminating condition or situation;

h)      The Plaintiff has the present intention of being able to enjoy the assets, privileges, services that are available in the place of public accommodation once the architectural barriers are removed in their entirety.  Nevertheless, the Plaintiff reserves the right to return to the place of public accommodation at any time before the

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

6

architectural barriers are removed, even if this represents submitting to dangerous or discriminatory conditions, with the purpose of seeking, identifying and denouncing the discrimination.

## PLAINTIFF

3.     The Plaintiff is a person that suffers from a physical disability that substantially limits several of his principal daily activities.  The physical disability is: cardiac insufficiency (congestive heart failure, **20%** heart function) hydrocephalus, abnormalities of the foot, obesity.  These conditions or impairments substantially limit Mister Faustino Betancourt, said physical disability substantially limits ( in comparison with the majority of the population) the following daily principal activities or of daily living: walking, standing, raising objects, leaning, working and others which encyclopedias, dictionaries and authoritative medical treaties have related with the aforementioned incapacity.  Similarly, the plaintiff has an extensive medical history regarding these conditions.

4.     The Plaintiff has a disability, as defined by the ADA Act, 42 U.S.C. §12102(1)(A).

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

**THE DEFENDANT**

5.    The Defendant is integrated by the following natural or juridical persons.

      i.    TotalEnergies Marketing Puerto Rico Corp.  It is the owner or operator of the public accommodation described in the first paragraph of the Complaint.  As a consequence of this, it is responsible and has the faculty of administration and adaptation of external areas, common areas and internal areas of the property.

      ii.    John Doe 1-100.  These unknown natural or juridical persons are titleholders, lessors, lessees, and operators of the property which is identified in the first paragraph of this petition.  Since the identity of these is unknown at this time, the Complaint will be amended in order to accrue them to these civil proceedings. In this Petition, the term "Plaintiff" also includes all of the unknown defendants identified with the fictitious name "John Doe 1-100".

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

**JURISDICTION AND VENUE**

7.      If this civil procedure is removed to the District Court of the United States, we will invoke the jurisdiction over the matter pursuant to 28 U.S.C. §§ 1331 and 1343 (a)(3) and (a)(4) for violations of ADA.

8.      The Court of First Instance has original jurisdiction to elucidate controversies that arise pursuant to Title III of the American with Disabilities Act and the Rehabilitation Act.

9.      This civil action has been presented before the judicial forum that has the competence since the Property in controversy is located in this judicial region.

**FACTS**

10.     The property is a location of public accommodation as defined by the ADA Act, 42 U.S.C. 12181(7) and it is a place open to the public and whose operation affects commerce by its nature as a gasoline service station.

11.     The Property is not residential, is not a private club nor is it a church.  Any person has access to use the gasoline service and pay for the consumption.

12.     The plaintiff is a resident of Puerto Rico.  His physical and postal address is: RES Los Lirios, 11 Teresa Jornet Street, Building 12, Apartment 34, San Juan (Cupey), Puerto Rico.  His telephone number is:  (787) 348-7280.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

13.     Mister Betancourt frequently visits the area because he has family in Bayamón.

14.     Mister Betancourt visited the property in question on May 9, 2021 in order to acquire the gasoline service and purchase fuel and lubricant for his motor vehicle.

15.     Mister Betancourt desires that once the location of accommodation is accessible for him in his condition as disabled, to return to the public place of accommodation and purchase gasoline for his motor vehicle (car), oil, lubricants in general and the services offered in the location, such as store and to use the bathrooms.

16.     The place of public accommodation has as a dependency a mini-market known as:  Cano's Service Station located at road PR. 787 Km. 4.4 Juan de Valle Sector Bayamón Wd. Cidra PR. 00789.

17.     The plaintiff visited the property for that on May 9, 2021 and found barriers that interfered with the capacity of the Plaintiff to use and enjoy the assets, services, privileges and accommodations offered on the Property.

18.     The plaintiff visited Cano's Service Station on May 9, 2021 at 6:12 pm and acquired the following products: 1. Gallon Puerto Rico for a cost of $24.75, 1

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

total Oil for a cost of $5.50. 1. Recycling oil for a cost of $0.75.  Enclosed is an image corresponding to the bill of sale of the date of the visit by Mister Betancourt.  Transaction No. 289835.  Shift No. 1458.

See bill hereinafter.

CANO'S SERVICE STATION
Road PR 757Km. 4.4 Juan del Valle Sector Bayamon Wd.
CIDRA, PR 00738
7877399662
Date: 5/8/2021   6:12 PM
Transaction No.: 289835
Shift No. 1458

| UPC/   PLU Amt | Description Price | Extension |
|---|---|---|
| 662363748404 | TOTAL QUARTZ: GW39 GALLON P.R. $24.75 | $24.75 |
| 662383735025 1.000 | TOTAL OIL: GW30PR $5.50 | $ 5.50 |
| LAW 3.000 | RECYCLING LAW PR OIL $0.2 5 | $0.75 |
| Sub Total: | $31.00 | |
| STATE TAX: | $0.00 | |
| MUNICIPAL TAX: | $0.00 | |
| Total | $31.00 | |
| Cash | $31.00 | |

Thank you for your purchase

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

19.     Plaintiff invokes legitimacy as a person that has the intention of returning to the Property for the express purpose of seeking and identifying architectural barriers that are on the Property in the future.  The goal of the search and identification of the architectural barriers will be for the purpose of: (1) denouncing additional barriers that are located in the future; (2) verifying the compliance or non-compliance of any order that is issued by this court regarding the elimination of architectural barriers.  It is affirmatively alleged the existence of an active legitimacy as tester of civil rights, as alleged in this paragraph, pursuant to the binding standard in this jurisdiction established in Suarez-Torres v. Punitory y Reposteria España, Inc., No.18-1616 (1st Cir. Feb. 17, 2021), where it was established that it is not necessary that a person with disabilities be a "bona fide client" of the location of public accommodation to have standing to claim rights under ADA.  A tester of civil rights is a person that has the specific intention of seeking, identifying and suing the discrimination, even if this represents submitting to the discrimination or to conditions that are unsafe. In Suarez-Torres v. Punitory y Reposteria España, Inc., the First Circuit unequivocally established the existence of an active legitimacy to the tester in determining:

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

12

Panadería España contends that, as testers, appellants are unable to establish an injury because their only motivation in visiting the bakery was to detect ADA violations.

We have not previously addressed the impact of a plaintiff's status as a "tester: on her ability to establish standing under the ADA.  However, the circuits that have considered this issue have uniformly concluded that an individual's "tester" status does not defeat standing.  As the Eleventh Circuit explained in Houston v. Marod Supermarkets, Inc., the DA guarantees the right of any individual to be free from "disability discrimination in the enjoyment of [public places of accommodation] regardless of [the individual's] motive for visiting the facility."  733 F.3d at 1332.  Congress did not limit the protections of the ADA to "clients or customers" or otherwise impose a bona fide visitor requirement.  Id. at 1332-34 (contrasting 42 U.S.C. §§3604(a), and 12182(b)(1)(A)(iv), which do contain such requirements).  Hence, such limitations should not be read into the ADA.  Id.  We agree with this analysis.  **Accordingly, we conclude that appellant's status as testers does not defeat standing.**

Suarez-Torres v. Panadería y Repostería España, Inc., No. 1801618 (1st Cir. Feb. 17, 2021) (internal citations omitted)(emphasis ours).

20.     In his capacity as a bone fide client, the Plaintiffs has felt, and feels today, dissuaded or discouraged from visiting the Property because he has knowledge of the illegal barriers that limit and interfere his access to the Property in the

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

parking area, the access routes, the interior and the bathrooms.  The Plaintiff knows the assets and services offered at the Property, and will return to the Property once the barriers are eliminated.  The Plaintiff knows that it would be useless to confront these barriers because confronting them is equal to submitting to a humiliating, discriminatory and dangerous situation.  All of the barriers herein described are directly related to the incapacity of the Plaintiff and interfere his complete and totally equal access.  Nevertheless, despite feeling dissuaded, he has the intention of returning to seek, identify and denounce the discrimination that exists in this Property.

21.    Based on his personal observations, and based on his experience as a person with limitations that has seen hundreds of accessible and non-accessible locations throughout his life, the Plaintiff affirmatively alleges that there exist the following architectural barriers of design in the Property related to his incapacity and his limitations of mobility.

### Access from Outside the Property:
### Parking, Access Route and Entrance to Cano's Service Station

a)    As to the access route, there is no access route from the parking area or the sidewalk towards an entrance accessible without stairs.  ADAAG 1991

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

14

§4.3; ADAAG 2010 §206.2.1.  Possible solutions: add a ramp, modify so that the grading of the slope is 1:20; add an elevation platform ("lifter").

b)      As to the parking areas, the number required of accessible parking spaces does not exist.  ADAAG 1991 § 4.1.2; ADAAG 2010 § 208.2.  Possible solutions reconfigure the parking through the utilization of paint.

c)      The parking area does not receive an adequate maintenance so that it is maintained in an "operable condition" in violation of 28 C.F.R. §36.211(a).  For example, the maintenance of the parking area has been poor, inconsistent and not in compliance with the applicable regulation.

d)      The configuration and dimensions of the accessible parking spaces is substantially inconsistent with the requirements of the applicable regulation.  ADAAG 2010 § 502.2, 502.3.  Possible solutions: reconfigure the parking area through the utilization of paint.

e)      The configuration and dimensions of the spaces adjacent to the parking area is substantially inconsistent with the requirements of the applicable regulation.  ADAAG 2010 § 502.2, 502.3, 503.3.3.  Possible solutions: reconfigure the parking spaces through the utilization of paint.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

f)   As to the parking area, it does not comply with the requirement of at least one parking that complies with the technical specifications and dimensions of the category of van.  ADAAG 1991 § 4.1.2(b); ADAAG 2010 § 208.2.  Nor does it comply with the requirement that one sixth of the parking spaces accessible have the dimensions of the van category.  Id.  Possible solutions: reconfigure the parking area through the utilization of paint.

g)   No parking space has the sign of van required by the applicable regulation.  ADAAG 2010 § 502.6.  Possible solutions: place the sign in all of the parking spaces.

h)   The parking area is not identified with the international symbol of accessibility.  ADAAG 2010 § 502.3.  Possible solutions: place all of the regulatory signs in all of the parking spaces available.  The sign must be at a height and in the position required by the regulation.

i)   The entrance does not comply with the requirements of the applicable regulation.  As to the entrances that are not accessible these do not have signs that indicate the location of the accessible entrance.  ADAAG 2020 § 216.6.  There are accessible and non-accessible entrances, but the

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

accessible entrances do not have the international symbol of disabled identifying them.  ADAAG 2010 § 216.6.  Possible solutions: make all of the entrances accessible and/or place the sign required by the applicable regulation.

**Access Within the Property Access to Goods and Services**

j)      There is a payment line and checkout aisle (PAYMENT LINE-CASHIER), but the dimensions and spaces are substantially inconsistent with the regulation available.  ADAAG 2010 § 7.2" ADAAG 2010 §§ 904.3.1 (payment aisle of 36"), 904.3.2 (surface no higher than 38").  Possible solutions: expand the width of the aisle and modify the size of the payment counter.

k)      There are sales and service counters, but the configuration and dimensions are substantially inconsistent with the applicable regulation. ADAAG 1991 § 7.2 ADAAG 2010 §§ 904.3.1 (requiring that there is a portion of the counter that is 36" high by 36" wide), 904.4 (requiring that the accessible part of the counter be the same depth as the unaccessible part). 904.4, 904.1 (requiring a minimum space for parallel or horizontal

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

approach to the counter), 306.2.2, 306.2.4, 306.3.1 (requiring a space underneath the counter when the design of the counter is for frontal approach).  Possible solutions: reduce a section of the counter, expand a section of the counter, replace the counter, expand the depth of the counter, reconfigure spaces to allow parallel or frontal approach, reconfigure counter for the space required below the counter in cases of design for frontal approach.

### Access to Men's Bathroom

l)      The bathroom that is not accessible lacks the sign required by the applicable regulation. ADAAG 2010 §2015.8, 206.2.4.  Possible solutions: place the sign at the correct height and position.  Notice that the sign must also comply with the requirements so that it be accessible to the persons with visual incapacities.

m)      As to the handrails around the toilet, the side grab bar as well as the rear grab bar of the toilet, the existing configuration on the wall to the side and behind the toilet is substantially inconsistent with the regulation applicable to handrails, in fact there is no handrail in the back.     ADAAG

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

2010 §§ 604.5.1, 609.4, 609.3, 604.5.2, 609.4, 609.6.  Possible solutions: place and position handrails in a manner consistent with the cited regulation.

n)      As to the washbasin, the part below the washbasin is not configured to avoid contact with the objects that are below the washbasin.  ADAAG 2020 § 606.5.  Possible solutions: modify the area below the wash basin so that there is no contact between the legs or knees and the objects that are below the washbasin.

o)      As to the equipment to dry the hands, the positioning and height does not comply substantially with the applicable regulation.  ADAAG 2010 §§ 206.2.  Possible solutions: Relocate the drying equipment.

22.     Not having the same access to the goods and services offered by the location.

23.     The barriers identified in the previous paragraph are only those that the Plaintiff personally knows and are based on his experience and common sense as a person with disabilities, not base don scientific or expert evidence.  The totality of the existing barriers on the Property, including those found and others

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

not discovered at the moment, are the cause of the legal damage of the Plaintiff, that is, the lack of complete, free and spontaneous access to the Property.  That is why, it is the intention of the Plaintiff to use the mechanisms of discovery of evidence to find, identify and state all those architectural barriers related to the incapacity of the Plaintiff so that the access to the Property be complete and equal.  After identifying the barriers, the Plaintiff intends to request that the court amend the allegations to conform the same to the evidence discovered regarding violations to ADAAG now unknown.

24.     The Defendants knew, or should have known, that the Property was and is unaccessible; that the conditions of the Property violate the Federal Law and interfere (or deny) the access to those incapacitated.   Furthermore, the Defendants have the financial resources to eliminate these barriers on the Property (without great difficulty or expense), and to make the Property accessible to the Plaintiff.  Up to this date, however, the Defendant refuses to eliminate these barriers.

26.     The Defendant has owned and enjoyed sufficient control and authority to modify the Property eliminating barriers and complying with the applicable

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

20

Federal regulation.  The Defendant has not eliminated said barriers and has not modified the Property to comply with the applicable standards of accessibility. The Defendant, in an intentional manner, has maintained the Property in its actual state and has abstained intentionally from altering the Property to comply with the standards of accessibility.

26.     The Plaintiff affirmatively alleges that the continuous presence of barriers on the Property is so obvious and open that it establishes the discriminatory intention of the Defendant.  the nature of the deviations to the Federal standards do not suggest non-compliance with the regulation due to a mere negligence or human error.  The non-compliance that exists is so substantial that it is obvious for a casual observer of average intelligence that does not have experience in the standards of accessible design or that does not have experience with architectural barriers for not having an incapacity.  It is based on this that the Plaintiff believes, and therefore affirmatively alleges, that the discriminatory intention includes the conscious and considered refusal to not adhere to relevant standards of construction; the disregard towards the construction plans and permits issued for the Property;  the conscious decision to maintain the

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

architectural design (as it presently exists) of the Property; the decision to not eliminate the architectural barriers maintaining it in a state of non-compliance motivated for profit.  It is affirmatively alleged that the Defendant has wanted to maintain a disloyal competition with his competitors by not investing money in complying with the Federal mandate despite the fact that his competitors do have to invest in compliance, which affects other economic actors.  The architectural barriers on the Property are not isolated (or temporary) interruptions of access due to maintenance or repairs.

27.    Based on the historical non-compliance of the Defendant with the ADAAG, the Plaintiff believes, and therefore alleges, that the Defendant does not have internal policies, procedures or documents in relation to efforts of compliance of ADA on the Property.

CAUSE OF ACTION
Americans with Disabilities Act of 1996

28.   The Plaintiff incorporates the allegations contained in the previous paragraphs.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

29.     Title III of the ADA Act essentially provides that no individual will be treated in an unequal manner due to incapacity in the full and equitable enjoyment (or use) of assets, services, installations, privileges and accommodations offered by any person whether a titleholder, lessor, lessee or operator of a public place of accommodation.  42 U.S.C. § 12182(a).

30.     The Defendant discriminated against the Plaintiff by refusing him a ful and equal enjoyment and access to the assets, services, privileges and accommodations of the Property during each visit and each occasion in which the Defendant decided to not visit the location.

31.     The ADA Act establishes different standards depending on who the physical structure was constructed and if the installation has been altered since January 26, 1992, 28 CFR §§ 36.401, 36.402.  The properties "existing" before January 26, 1992 have to eliminate the access barriers of the incapacitated persons when the elimination is "easily achievable".  42 U.S.C. § 12182 (b) (2) (A) (iv); 28 CFR § 36.304.  Structures designed and constructed to be occupied for the first time after January 26, 1993, must be accessible to persons with incapacities unless the entity can demonstrate that it is "structurally unpractical".

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

42 USC § 12183(a).  Finally, the alterations after January 26, 1992 must be made to guarantee that, in the "maximum extension possible", the portions of the installations altered are accessible.  28 CFR § 36.402 (a) (1).

32.     The standards of design, ADAAG, were published for the first time in 1991 and are codified in 28 CFR Part 36, Appendix A ("ADAAG of 1991").  The most recent standards of ADA design were published for the first time in 2010 and were codified in 28 CFR Part 36, Subpart D (the ADAAG of 2010). Both standards are available at www.ada.gov.   All of the new constructions and modifications commenced on March 15, 2012 or after must comply with the ADAAG of 2010.

33.     The Plaintiff believes that the Property was designed to be occupied for the first time after January 26, 1993.  See 28 CFR § 36.401.

34.     The Plaintiff believes that the Property is located in a place that was constructed after January 26, 1993.  See 28 CFR § 36.401.

35.     The Plaintiff believes that the Property was "altered" after January 26, 1993.   The term "altered" or "alterations" indicates, but is not limited to, remodeling, renovation, rehabilitation, historical restoration, changes or restructuring in structural elements or parts, changes or restructuring in the

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

configuration of walls and changes in the counters, tables or objects inside the Property.

36.     In the alternative, if the Property was not designed and constructed to be occupied for the first time after January 26, 1993, the Property is an existing installation in which case there is an obligation to eliminate architectural barriers that affect the disabled persons in the measure that the elimination is "easily achievable".   42 USC § 12182(b) (2).   The ADA Act establishes that, in evaluating if the elimination of barriers is "easily achievable", the factors to be considered include the "resources" of the installation, 42 USC § 12181 (9) (b), which includes "the general financial resources of any parent company or entity", 28 CFR § 36.104.  If the Defendant sustains that it does not have the financial resources as an affirmative defense to excuse its non-compliance, the Plaintiff does not accept said pretexts and proposes to use the mechanisms of discovery of evidence pursuant to 28 C.F.R. § 36.104.

## DO NOT ELIMINATE THE BARRIERS IN AN EXISTING INSTALLATION

37.     ADA specifically prohibits not eliminating the architectural barriers in existing installations when said elimination is easily achievable. 42 USC §12182(b)(2)(A)(iv); 28 C.F.R. §36.104.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

38.     When an entity can demonstrate that the elimination of a barrier cannot be easily achieved, said entity has to ensure that the assets, services, privileges and accommodations are made available through alternate mechanisms, if these methods are easily achievable. §12183 (b)(2)(A)(v).

39.     Here the Plaintiff alleges that the Defendant can easily eliminate the architectural barriers on the Property without great difficulty or expense, and that the Defendant violates the ADA Act by not eliminating these barriers, when it could and an easily do so.

40.     In the alternative, if it is "not easily achievable", for the Defendant to eliminate the architectural barriers, the Defendant violated ADA by not making its services available through alternative methods that are easily achievable.

## NOT DESIGNING AND CONSTRUCTION
## AN ACCESSIBLE INSTALLATION

41.     The Property was designed and constructed (or both) after January 26, 1992 - activating the requirements of access under Title III of ADA and the regulation enacted by the Department of Justice of the United States.

42.     The defendant violated the ADA Act by designing and constructing (or both) the Property in a manner that is not easily accessible for the public with a physical disability, including the Defendant, when doing so was structurally practical.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

## NOT MAKING AN ALTERED INSTALLATION ACCESSIBLE

43.    The Plaintiff believes, and therefore allegedly affirms, that the Property has been altered (as the term "alteration"is defined by §§202.1, §§202.3, 202.4) after January 26, 1992. 28 CFR §36.403; 49 CFR §37.43.

44.    ADA also requires that the installations be altered in such a manner that it is easily accessible for incapacitated persons in the maximum measure possible.  42 U.S.C. §12183(a)(2).

45.    The Defendant altered the Property in a manner that violated ADA and did not make it accessible to the physically disabled public, including the Plaintiff.

## NON-STRUCTURAL BARRIERS
## POLICIES AND PROCEDURES

46.    The ADA Act also requires making reasonable modifications in the policies, practices and procedures, when it is necessary to provide equal access to the services, assets, privileges or accommodations to the disabled persons, unless the entity can demonstrate that making said modifications would  fundamentally alter its nature.  42 USC §12182 (b)(2)(A)(ii).

47.    Here the Defendant violated the ADA Act by not making reasonable modifications in its policies, practices or procedures in the Property, when these modifications are necessary to allow (without fundamentally altering the nature

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

of the location of public accommodation) equal access to the goods, services, installations or accommodations.

## REQUEST FOR PERMANENT INJUNCTION
## UNDER TITLE III OF ADA

48.     As a result of the architectural barriers previously described in this present action the Plaintiff suffered and continues to suffer humiliation, anguish and impairment of his personal dignity and right to live free from discrimination or interference with his legal rights.

49.     The Plaintiff is entitled to a remedy to a permanent statutory injunction pursuant to 42 USC §12188 (a)(2) and 28 CFR §36.504 (a) which orders the Defendant to take all of the necessary steps to eliminate the architectural barriers previously described and so its installations will comply with the requirements established in ADA and its regulations of implementation, so that its installations be totally accessible to, and in an independent manner, by persons with limited mobility, and that it also order that the court will retain jurisdiction for a period to supervise that the Defendant complies with the relevant requirements of ADA and to ensure that the Defendant has adopted and follows an institutional policy which in fact will make the Defendant remain totally in compliance with the law.

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

50.     The Plaintiff is also entitled in case the Defendant continues with its discriminatory condition, to request that there be ordered the closing and closure of the Property as a measure to detain the discriminatory condition until such time as the defendant has accredited in a reliable manner to the satisfaction of the court that it has eliminated the discrimination.

51.     Pursuant to 42 USC §§12205, the Plaintiff is entitled to his attorneys fees, litigation expenses, costs an expenses of expert witnesses.

## LEGAL REMEDIES REQUESTED

**WHEREFORE,** the Plaintiff very respectfully requests the following legal remedies:

A.     A declaratory judgment stating that the Defendant has violated the requirements of Title III of ADA and the relevant regulation of implementation of ADA; and that the Property is not completely accessible and usable in an independent manner for persons with limited mobility such as the Plaintiff.

B.     A permanent statutory injunction pursuant to 42 USC § 12188 (a)(2) and 28 CFR § 36.504 (a) that orders the Defendant to take all of the necessary steps to eliminate the architectural barriers previously

Certified to be a true and
correct translation from its original.
Aida Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

described and so that its installations will comply with the requirements established in ADA and its implementation regulations, so that its installations will be totally accessible to, and in an independent manner, by persons with limited mobility, and that it also order that the court will retain jurisdiction for a period to supervise that the Defendant complies with the relevant requirements of ADA and to ensure that the Defendant has adopted and follows an institutional policy which in fact makes the Defendant remain totally in compliance with the law;

C. In case the Defendant continues his discriminatory condition, it request that pursuant to 42 USC § 12188 (a)(2) and 28 CFR § 36.504 that it order the closing and closure of the Property as a measure to detain the discriminatory condition until the Defendant has accredited in a reliable manner to the satisfaction of the court that it has eliminated the discrimination;

D. Attorneys, fees, costs, litigation expenses, pursuant to 42 USC § 12205.

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

E.   The provision of any other remedy that is fair, proper, pursuant to law or equity, that has not been expressly requested but that is pertinent as a matter of law.

**RESPECTFULLY SUBMITTED.**

Today, April 30, 2022.

**Vélez Law Group LLC**
Civil Rights Division

s/José Carlos Vélez Colón
Atty. José C. Vélez Colón
RUA 18913
Midtown Condominium
421 Muñoz Rivera Ave. #205
San Juan, PR 00918-3115
jvelez@velezlawgroup.com
T. (787)-254-8267

**Attorney for Plaintiff**

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

(this line is illegible)

BY 2020CV02233 04/30/2022 02:48:09 pm Entree No. 2 Page 2 of 2

## **EVIDENCE OF SERVICE**

### **CASE NO.:  BY2022CV02233**

**Faustino Xavier Betancourt Colón v. TotalEnergies Marketing Puerto Rico Corp.**

I, Gabriel Santana, declare that I have the legal capacity pursuant to Rule 4.3 of the Rules of Civil Procedure of Puerto Rico, and certify under my signature and oath that the service of process of the **SUMMONS AND COMPLAINT** (hereinafter "**COMPLAINT**") is the referenced case was made by me in the manner indicated hereinafter:

1. **DATE** and time of service:  26 - MAY - 2022.

2. **PLACE OR ADDRESS** of the delivery of the Summons and a copy of the Complaint in a joint manner:
   Millennium Park Plaza #15 2nd St, Suite 525
   Guaynabo, P.R. 00968

3. **METHOD OR FORM OF DELIVERY:**  I delivered a copy of the Summons and a copy of the Complaint in a joint manner and personally to the person indicated below, who assured me they were authorized to receive summons on behalf of the person who appears on the reverse side, pursuant to Rule 4.4. of the Rules of Civil Procedure of Puerto Rico.

4. **THE NAME OF THE AUTHORIZED PERSON THAT RECEIVED THE SUMMONS AND COMPLAINT IS:**
   Luis Lladó - Director Network          s/illegible

5. **SIGNATURE OF SERVER:**  s/illegible

*****************************************************************

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

2

# STATEMENT OF SERVICE
## (BEFORE THE SECRETARY OF THE COURT)

I state under penalty of perjury, pursuant to the laws of the Commonwealth of Puerto Rico, that the information provided above in the service of the summons is true and correct.

**IN WITNESS WHEREOF**, I sign the present in _____, Puerto Rico, today the ____ day of _____ of the year 2022.


_____
**SIGNATURE OF PROCESS SERVER**

Sworn and subscribed to before me by _____ of the personal circumstances mentioned above, who since I do not know the same personally, I attest I have identified the same through the following personal identification:


_____

In_____, Puerto Rico, today _____, 2022.

_____
**AUTHORIZED OFFICIAL**

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

(this line is illegible)
BY 2020CV02233 04/30/2022 02:48:09 pm Entree No. 2 Page 1 of 4

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SUPERIOR PART OF BAYAMON**

| | | |
|---|---|---|
| **FAUSTINO XAVIER** | . | |
| **BETANCOURT COLÓN** | . | **CIVIL NO.:** |
| | . | |
| **Plaintiff** | . | |
| | . | |
| **vs.** | . | |
| | . | |
| **TOTALENERGIES MARKETING** | . | **RE:** |
| **PUERTO RICO CORP.** | . | **PETITION FOR ORDER** |
| **JOHN DOE 1-100** | . | |
| | . | |
| **Defendant** | . | |

..............................................................................................................

**SUMMONS**

COMMONWEALTH OF PUERTO RICO, SS
THE PRESIDENT OF THE UNITED STATES
THE COMMONWEALTH OF PUERTO RICO

TO:
**TOTALENERGIES MARKETING PUERTO RICO CORP.**
**ADDRESS:**  Millennium Park Plaza #15 Second Street, Suite 525, Guaynabo, PR
00968
**PRESIDENT:**  Francisco Boussagol

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com

2

**YOU ARE HEREBY** summoned to present to the court your responsive allegation within thirty (30) days of having this summons been served, excluding the day of service.  You must present your responsive allegation through the Unified System of Management and Administration of Cases (SUMAC in Spanish), which you may access using the following electronic address: https://unired.ramajudicial.pr, unless you represent yourself on your own, in which case you must present your responsive allegation with the clerk of the court. If you fail to present your responsive allegation within the aforementioned term, the  court may issue judgment in default against you and grant the remedy requested in the complaint, or any other, if the court, in the exercise of its sound discretion, deems it pertinent.

Name of Attorney:       JOSÉ CARLOS VÉLEZ COLÓN (RUA 18913)
Address:                         421 MUNOZ RIVERA AVE., APT. #205, SAN JUAN,
                                      PUERTO RICO, 00918-4015
                                      Tel: (787)254-8267
E-mail:                           VLG@VELEZLAWGROUP.COM

        Issued under my signature and the seal of the Court on MAY 05 2022.

                              LISILDA MARTINEZ AGOSTO
                                      Name of the
                                      Regional Clerk
                     By:    S/LISANDRA BORGES OCASIO
                              DEPUTY CLERK OF THE COURT
                                Name and Signature of the
                                Deputy Clerk of the Court

Seal of the Court
s/illegible
E038

Certified to be a true and
correct translation from its original.
Aída Torres, U.S.C.C.I.
Tel. 787-225-8218
aidatranslation@gmail.com